James E. LONG, Jr., Plaintiff,

v.

DIAMOND M DRILLING CO., INC.,
Defendant-Appellant,

v.

PHILLIPS PETROLEUM COMPANY,
Defendant-Appellee.

No. 80–3550.

United States Court of Appeals,
Fifth Circuit.

April 29, 1982.

Rehearing and Rehearing En Banc
Denied June 24, 1982.

Joseph J. Weigand, Jr., Houma, La., for defendant-appellant.

Scofield, Bergstedt & Gerard, Richard E. Gerard, Jr., Lake Charles, La., for defendant-appellee.

Before BROWN, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

James E. Long, Jr., the original plaintiff, was injured while employed by Schlumberger Well Surveying Corporation ("Schlumberger") and working on rig no. 99, a drilling barge owned by Diamond M Drilling Company ("Diamond M"). Long's claims against Diamond M and Schlumberger were settled, and Diamond M paid $170,000 to Long. Diamond M filed a third-party demand against Phillips Petroleum Company ("Phillips"), the owner of the well being drilled, based on an indemnity clause in its contract with Phillips.[1] The question

1. Paragraph 16.8 of the contract provides:

*Indemnity by Owner*: Owner agrees to protect, indemnity, and save harmless, the

presented by this appeal is whether Tex. Civ.Stat.Ann. art. 2212b, effective August 27, 1973, applies to this contract to bar Diamond M's recovery of indemnity for amounts paid as a result of its negligence. The district court found that the statute rendered the indemnity agreement null and void.

The statute provides in pertinent part as follows:

Section 1. The legislature finds that an inequity is fostered on certain contractors by the indemnity provisions contained in some agreements pertaining to wells for oil, gas, or water, or mines for other minerals. It is the intent of the legislature and the purpose of this Act to declare provisions for indemnity in certain agreements where there is negligence attributable to the indemnitee to be against the public policy of the State of Texas.

Section 2. Except as specified in Section 4 of this Act, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas or water, or mine for any mineral, is void and unenforceable if it purports to indemnify the indemnitee against loss or liability for damages arising from either death or bodily injury to persons, or injury to property, or any other loss, damage, or expense arising from either death or bodily injury, injury to property, or loss, damage, or expense, which is caused by or results from the sole or concurrent negligence of the indemnitee or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

. . . .

Section 4. . . . . (d) The provisions of this Act apply only to agreements or contracts *made on or after the effective date of this Act.*

Tex.Civ.Stat.Ann. art. 2212b (emphasis added).

The original contract containing the indemnity provision had a one-year term from May 28, 1972, to May 28, 1973. It gave Phillips the option to extend the length of the contract by advising Diamond M of the extension at least ninety days prior to the expiration of the contract.[2] By letter countersigned on February 1, 1973, Phillips and Diamond M agreed to a four-month extension, from May 28, 1973, to September 28, 1973, and also agreed that Phillips would have until July 1, 1973, to exercise its option to renew for an additional one-year term. By letter of June 27, 1973, Phillips exercised its option, thereby extending the term of the contract from September 28, 1973, to September 28, 1974. Long's accident occurred on March 24, 1974. The issue, then, is whether the contract was

Contractor from and against all claims, demands, and causes of action made against Contractor, or in which Contractor may be named party defendant, by owner's employees, agents, or invitees, on account of personal injuries or death or on account of property damages (other than property damages as in this Paragraph 16 specifically provided for) arising out of work performed by Owner, Owner's employees, agents, or invitees, and contractors or subcontractors (other than the Contractor under this contract) or equipment furnished in connection therewith, irrespective of whether such claims are occasioned, brought about or caused in whole or in part by the negligence of Contractor, its employees, agents, or invitees, or by the negligence of Contractor's subcontractors, or any party for which Contractor is performing services, or the employees, agents, or invitees of such party, or subcontractor or by the unseaworthiness of vessels or craft.

2. Paragraph 3.2 of the contract provides:

Owner shall have an option to extend the length of the contract under the same terms and conditions by advising the Contractor in writing at least ninety (90) days prior to the expiration of the contract that it intends to exercise said option. However, Contractor may give Owner notice of a wage increase or the escalation in price of materials, supplies, and services furnished by Contractor and therefore request that Owner renegotiate the payment rates herein provided to compensate for such increase. If Owner and Contractor do not agree on new payment rates, Contractor shall have the right to terminate this agreement by written notice to Owner, effective whenever Contractor shall have completed operations desired to be performed by Owner upon any well being drilled hereunder.

"made" before August 27, 1973, within the meaning of article 2212b.

Phillips argues that because section 3.2 of the 1971 contract gives Diamond M the right to request renegotiation of the contract if Phillips exercises its option to extend, Diamond M could have asked for a rate increase after August 27, 1973. However, the rates for the new term were already settled in the June 27, 1973, letter, and Diamond M was bound by its terms. No changes in the contract were made after June 27, 1973.

Phillips also argues that the last extension was a new contract with a one-year term beginning September 28, 1973, and that therefore the contract was created subsequent to the enactment of article 2212b. However, a contract is made at the time the last act necessary for its formation is done. *Texas Employers' Insurance Association v. Moore*, 56 S.W.2d 652, 655 (Tex.Civ.App.— Waco 1932, writ dism'd); *Florida Towing Corp. v. Oliver J. Olsen & Co.*, 426 F.2d 896, 900 (5th Cir. 1970). Therefore, even if the last extension was a new contract, the final act necessary for its formation was done on June 27, 1973, two months before the effective date of the Texas statute. By its own terms, article 2212b is inapplicable to this contract, and Phillips is thus obligated to indemnify Diamond M for the $170,000 settlement paid to James E. Long, Jr. for personal injuries sustained while working on Phillips' well.

REVERSED.