Tommy TUCKER, et al., Appellants,

v.

ATLANTIC RICHFIELD CO., et al., Appellees.

No. 13–89–093–CV.

Court of Appeals of Texas, Corpus Christi.

March 29, 1990.

Rehearings Overruled April 26, 1990.

David C. Bland, Baker, Brown, Sharman & Parker, Houston, L.L. Duckett, Duckett, Bouligny & Collins, El Campo, for appellants.

Lawrence E. Glenn, Crady, Jewett, Johnston & McCulley, Rollin L. Fischer, Byrnes, Lazor & Fischer, Houston, Thomas A. Albright, Richard P. Marshall, Jr., Scott, Douglass & Luton, Austin, for appellees.

Before NYE, C.J., and SEERDEN and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

By a December 4, 1979 lease purchase agreement, Jon Nelson assigned to Atlantic Richfield Company (ARCO) the deep rights to the "Nelson leases," which consist of several separate leases described therein, including lease number five, the Davidson Lease, which is presently in dispute, and lease number eleven, the Cameron–Duncan Lease. The lease purchase agreement, however, incorrectly specified the depth which was to separate Nelson's interests from ARCO's interests.

A subsequent letter agreement dated March 31, 1980 purported to amend the original lease purchase agreement under the following terms:

This letter is intended to clarify our Lease Purchase Agreement and, specifically, the acquisition of the Cameron Duncan, et al., Lease, No. 11 per the above-captioned Lease Purchase Agreement.

Upon your successful amending of the Cameron Duncan, et al., Lease [an amendment which was made and which has no relevance], you will assign to Atlantic all rights below 150 feet below the base of the Yegua formation, which point is identified on the induction electric log of the Hanson No. 1 Duncan Well located in the Charles Boyd Survey, A–578, Wharton County, Texas, at a depth of 7,838 feet below the surface. [all rights below 7988 feet—the original deep rights, less the rights that are presently in dispute.]

Nelson signed this letter agreement on April 1, 1980. Production was later obtained between the disputed depths on the Davidson Lease.

Appellants filed suit on May 5, 1987 for a declaratory judgment that ARCO has no rights to the disputed depths on the Davidson Lease, and for a reformation of the original agreement to correctly identify the intended separation point. ARCO moved for summary judgment on the ground that the action for reformation was barred by limitations and that the letter agreement violated the statute of frauds. The trial court granted summary judgment in favor of ARCO, from which appellants bring the present appeal.

By a single point of error, appellants contend the trial court erred in granting summary judgment favorable to appellees. The movant for summary judgment bears the burden of showing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue exists to preclude summary judg-

ment, evidence favorable to the non-movant will be accepted as true. Every reasonable inference will be indulged in the nonmovant's favor and any doubts resolved in its favor. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises a fact issue with reference to the essential elements of a plaintiff's claim or cause of action, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact concerning one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970).

In considering this summary judgment, appellees argue that we should not consider David C. Bland's affidavit because of the lack of an acknowledgment. Bland, an attorney for appellants, gave an affidavit stating, in relevant part, that ARCO did not deny appellants' claims until December 19, 1986. This affidavit, however, does not contain Bland's notarized signature. Appellants acknowledge the affidavit's deficiency, but argue both waiver, and that, even if invalid, the affidavit is unnecessary to support their claims.

An "affidavit" is defined as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." Tex.Gov't Code Ann. § 312.011 (Vernon 1988). Without the notarization, Bland's unsworn statement is not an affidavit and is not competent summary judgment proof. *Trimble v. Gulf Paint & Battery, Inc.*, 728 S.W.2d 887, 889 (Tex.App.—Houston [1st Dist.] 1987, no writ). While it is true that purely formal deficiencies in an affidavit can be waived if not raised at the trial court level, Tex.R.Civ.P. 166a(e), the absence of a jurat is substantive, and not a "purely formal defect." This cannot be waived just by failing to bring it to the trial court's attention. *Trimble*, 728 S.W.2d at 889. Nevertheless, we find from the record that appellants have presented sufficient summary judgment evidence without

Bland's affidavit to raise a fact issue regarding their cause of action.

Appellees' motion for summary judgment alleges that in order for appellants to obtain relief, they must first acquire title to the leasehold where the well was completed. According to appellees, appellants can accomplish this only through reformation of the January 14, 1980 assignment.[1] Appellees contend that, as a matter of law, reformation of the assignment is barred by the statute of limitations and the statute of frauds. We disagree.

■ The summary judgment order does not indicate whether the trial court relied on the statute of frauds or the statute of limitations when granting the summary judgment. When a summary judgment order does not state the grounds upon which it is granted, a party appealing from the order must show that each of the independent arguments alleged in the motion are insufficient to support the trial court's summary judgment order. *McCrea v. Cubilla Condominium Corp., N.V.,* 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

■ The defenses of statute of frauds and statute of limitations are affirmative defenses. Tex.R.Civ.P. 94. When a defendant moves for a summary judgment based on an affirmative defense, its burden is to prove conclusively all elements of the affirmative defense as a matter of law such that there is no genuine issue of material fact. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–311 (Tex.1984). The movant defendant must come forward with summary judgment evidence with respect to each element of the affirmative defense. *Nichols v. Smith,* 507 S.W.2d 518, 520 (Tex.1974). Unless the movant conclusive-

ly establishes the affirmative defense, the non-movant plaintiff has no burden in response to a motion for summary judgment filed on the basis of an affirmative defense. *Torres v. Western Casualty and Surety Co.,* 457 S.W.2d 50, 52 (Tex.1970). If a movant establishes an affirmative defense which would bar the suit as a matter of law, the nonmoving party must then adduce summary judgment proof raising a fact issue in avoidance of the affirmative defense, for example, facts which would bring the matter within an exception or defense to the movant's affirmative defense. *Palmer v. Ensearch Corp.,* 728 S.W.2d 431, 435 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

■ Appellees contend that appellants' suit for reformation was barred by the four-year statute of limitations. Enforcement of any equitable right to reformation of an agreement is barred by the four-year statute of limitations. *Athenian Realty Corp. v. Southwestern Bell Telephone Co.,* 236 F.Supp. 537, 542 (N.D.Tex. 1964), *aff'd,* 338 F.2d 1001 (5th Cir.1964), *cert. denied,* 380 U.S. 953, 85 S.Ct. 1086, 13 L.Ed.2d 970 (1965); Tex.Civ.Prac. & Rem. Code Ann. § 16.051 (Vernon 1986).[2] The limitations period begins to run against the right to reformation from the time when the party mistaken discovered, or should have discovered, the error or omission. *Mason v. University of the South,* 212 S.W.2d 854, 856 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.); 36 Tex.Jur., *Commencement and Completion,* Sec. 26 (1935). In the instant case, the March 31 letter agreement, which attempted to amend the lease purchase agreement, is conclusive evidence that both parties were aware of the mistaken depth no later than

---

1. Pursuant to the December 4 lease purchase agreement, the owners of the lease, Robert Dewar, Marmaton Oil Co., Merichem Energy Co., Robert C. Overton, Jr., Rollum Co., Tommy Tucker and William R. Waddell, assigned to ARCO the "deep rights" in the oil, gas and mineral lease made a basis of this suit. This assignment, dated January 14, 1980, separates the "deep rights" from the "shallow rights" as follows:

   All rights below the base of the Yegua Formation which point is identified on the Induction

Electric Log of the Hanson No. 1 Duncan Well located in the Charles Boyd Survey A–578, Wharton County, Texas at a depth of 7655 feet below the surface, ...

2. Section 16.051 provides: "Every action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues."

April 1, 1980, the date Nelson signed the letter agreement. Appellants argue that ARCO "lulled Mr. Nelson into a sense of security," by acting in conformity with the corrected depth on certain wells. This does not, however, alter the fact that Nelson had actual knowledge of the mistake in the original agreement and did nothing to reform that agreement within the period of limitations. Therefore, we conclude that limitations had run on appellants' reformation action. Appellants' declaratory judgment action, however, is still viable because the discovery of the mistaken depth did not cause limitations to begin to run concerning the declaratory judgment cause of action. A cause of action for a declaratory judgment does not accrue until a justiciable controversy exists between the parties. *California Products, Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780, 781 (1960); *El Paso Natural Gas Co. v. American Petrofina Co.*, 733 S.W.2d 541, 554 (Tex.App.—Houston [1st Dist.] 1986, no writ).

■ The statute of frauds, Tex.Bus. & Com.Code Ann. § 26.01(a) (Vernon 1987), provides that a promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it is in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. Subsection (b) provides that Section 26.01(a) applies to a lease of real estate for a term longer than one year. In *Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 909 (Tex.1982), our Supreme Court stated that in order for a writing to meet the requirements of the statute of frauds in an issue concerning the description of property, the writing must furnish within itself or by reference to some other existing writing, the means or data by which the particular land which is to be conveyed may be identified with reasonable certainty.

The March 31 letter agreement refers to an existing document, the lease purchase agreement between Nelson and ARCO, which states that "[i]n those leases identi-fied as lease Nos. 1 through 13, the assignment from Nelson to Atlantic shall cover all rights below the base of the Yegua Formation which point is identified on the Induction Electric Log of the Hanson No. 1 Duncan Well located in the Charles Boyd Survey, A–578, Wharton County, Texas, at a depth of 7655 feet below the surface." Regarding lease numbers one through thirteen, Exhibit "A", attached to the lease purchase agreement, gives the lease number, the name of the lessor, the lease date and a description of each lease. This lease purchase agreement contains sufficient data so that the land to be conveyed, lease numbers one through thirteen, can be identified with reasonable certainty.

■ Appellees contend, however, that the failure of the March 31 letter agreement to specify the Davidson Lease as subject to the modification of the lease purchase agreement constitutes a failure to describe the Davidson Lease sufficient to satisfy the statute of frauds. We disagree with this argument. We cannot tell whether the March 31 letter agreement, by assigning "all rights" below the corrected depth, means all rights only under the Cameron Duncan Lease, or all rights below all the leases covered by the lease purchase agreement. This, however, is not an ambiguity of description, but of the extent to which the modification is to be applied to the leases under the lease purchase agreement.

In so far as the description of the property is concerned, we hold that the lease purchase agreement satisfies the statute of frauds. Furthermore, the ambiguity raises a fact issue concerning the proper construction of the modification contained in the March 31 letter agreement. Therefore, the trial court erred by granting summary judgment based upon this affirmative defense.

The judgment of the trial court is accordingly REVERSED AND the cause is REMANDED concerning appellants' alleged cause of action for a declaratory judgment. The judgment of the trial court concerning

appellants' alleged cause of action for reformation is accordingly AFFIRMED.