HARRIS FIBERGLASS V. VOUGHT

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-437-CV

HARRIS FIBERGLASS APPELLANT

MATERIALS, INC.

V.

VOUGHT AIRCRAFT APPELLEE

INDUSTRIES, INC.

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

This is an appeal from a summary judgment in favor of appellee Vought Aircraft Industries, Inc.
  In two issues, appellant Harris Fiberglass Materials, Inc. contends that the trial court erred by granting either a traditional or no-evidence summary judgment on each of its claims against Vought.  We affirm.

Background

Lockheed Martin and Vought entered into an agreement, contingent on the approval of a contract between Lockheed and the U.S. government, for Vought to supply Lockheed with wings for an aircraft.  In accordance with the agreement, Vought shipped some of Lockheed’s tools and materials from South Korea in anticipation of government approval of the project.  Harris agreed to store the tools, hoping that Vought would subcontract with it to perform the wing work.  Harris submitted two bids for the wing work, each of which expired by its own terms.  For several years, while waiting for the project to be approved by the government, Harris stored the tools for Vought, and Vought paid for the storage.  Harris also turned away other work and hired additional people in anticipation of obtaining the subcontract.

After Lockheed told Vought that it would not get the contract for the wing work, Vought told Harris that it would not get the subcontract.  Harris sued Vought, alleging that Vought had known for some time that it would not be obtaining the contract from Lockheed and that it intentionally withheld this information from Harris to Harris’s detriment.  Accordingly, Harris brought claims for fraud, negligent misrepresentation, breach of contract, and quantum meruit.  Vought filed traditional and no-evidence motions for summary judgment, which the trial court granted.

Standard of Review

Although when both no-evidence and traditional summary judgment motions are filed we usually address the no-evidence motion first, 
see Ford Motor Co. v. Ridgway
, 135 S.W.3d 598, 600 (Tex. 2004), here we will review the propriety of granting the traditional summary judgment first because it is dispositive.  
See
 
Tex. R. App. P.
 47.1; 
Reynolds v. Murphy
, 188 S.W.3d 252, 258 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh’g), 
cert. denied
, 127 S. Ct. 1839 (2007).

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  
IHS Cedars Treatment Ctr.
, 143 S.W.3d at 798.

Analysis

Harris contends that summary judgment on its fraud, negligent misrepresentation, breach of implied contract, and quantum meruit claims is improper under either the traditional or no-evidence standards.  The gravamen of its fraud and negligent misrepresentation complaints is that Vought continued to affirmatively misrepresent to Harris that it might still enter into a contract with Lockheed for some time after it conclusively knew that it would not and that Harris relied on these misrepresentations to its detriment.  Harris’s breach of contract claim is based on its contention that an implied contract existed between the parties based on industry custom, and its quantum meruit claim is based on its contention that it performed a valuable service for Vought by being ready and able to perform the wing work immediately upon Lockheed and Vought entering into a contract.

Fraud and Negligent Misrepresentation Claims

A person commits fraud by (1) making a false, material misrepresentation (2) that the person either knows to be false or asserts recklessly without knowledge of its truth (3) with the intent that the misrepresentation be acted upon, (4) and the person to whom the misrepresentation is made acts in reliance upon it (5) and is injured as a result.  
Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc
., 960 S.W.2d 41, 47-48 (Tex. 1998) (op. on reh’g); 
Reynolds
, 188 S.W.3d at 270.  The elements of a negligent misrepresentation claim are that (1) the defendant made a representation in the course of its business, or in a transaction in which it had a pecuniary interest,  (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.  
Fed. Land Bank Ass’n v. Sloane
, 825 S.W.2d 439, 442 (Tex. 1991).  In both fraud and negligent misrepresentation, reliance must be justifiable.  
Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co
., 51 S.W.3d 573, 577 (Tex. 2001); 
Fed. Land Bank Ass’n
, 825 S.W.2d at 442.

The summary judgment evidence shows that Vought did not accept Harris’s July 27, 2001 and January 16, 2002 bids to act as a subcontractor in connection with the inventorying, clean-up, and painting of the tools that were shipped from South Korea.  In a January 25, 2002 letter, Vought asked Harris to submit yet another bid segregating each of the tasks it had previously bid on. In the letter, Vought’s procurement manager Ty Colston said, “As I was saying, it now looks like your first part of the effort will be strictly a storage type function until actual contract go-ahead to move forward with the tool clean up effort.”  Therefore, there is evidence that as of January 25, 2002, Vought specifically informed Harris that any future work other than the tool storage would be contingent on Vought getting the Lockheed contract.

In addition, the summary judgment record contains deposition testimony from Harris’s corporate representative that Harris knew that “ultimately starting the project depended on Lockheed Martin giving the go-ahead for the project” and that Harris understood that from the “get-go.”  Specifically, Harris’s President, Vernon LeRoy Harris, testified that he understood that Vought could not give the go ahead to Harris until Vought got the go ahead from Lockheed.   Vernon also testified that his understanding of Harris’s initial task was that it would be to unload the tools and store them and that they would not be cleaned until Lockheed had authorized Vought to proceed. 

In response to the January 25, 2002 letter, Harris submitted two additional bids to Vought on February 5, 2002; both of these bids expired by their own terms.  On March 15, 2002, Vought sent Harris a letter reiterating that Harris’s only task was to unload and store the tools.  Vought presented summary judgment evidence that Harris knew as early as August 2004 that Lockheed had not authorized the project to go forward. 

Harris points to summary judgment evidence that Vought affirmatively misrepresented to Harris during this same time (2002 through August 2004) that it could still be awarded the Lockheed contract even though Vought knew that was no longer a possibility and that Harris relied on these misrepresentations in continuing to prepare for a possible contract with Vought for the wing work.  However, there is also evidence that Harris knew during that entire time that Vought and Lockheed did not yet have a contract for the work and that no one from Vought guaranteed Harris the work, either verbally or in writing.  Harris’s admissions that it understood that Vought could not authorize it to do any work until Vought had a contract with Lockheed, and that Vought never had a contract with Lockheed, combined with evidence of Vought’s failure to accept Harris’s specific bids for the project, negate any claim that Harris’s reliance on Vought’s misrepresentations that a contract with Lockheed was about to be consummated was justifiable.  Thus, the summary judgment evidence negated at least one element of Harris’s fraud and negligent misrepresentation claims.
  See Ernst & Young
, 51 S.W.3d at 577; 
Fed. Land Bank Ass’n
, 825 S.W.2d at 442; 
Prospect High Income Fund v. Grant Thornton LLP
, 203 S.W.3d 602, 618 (Tex. App.—Dallas 2006, pet. filed).  Harris’s contrary knowledge that Lockheed had to first approve the project precludes any claim that Harris reasonably relied on alleged misrepresentations by Vought.  
See Coastal Corp. v. Atlantic Richfield Co
., 852 S.W.2d 714, 720-21 (Tex. App.—Corpus Christi 1993, no writ).

Implied Contract and Quantum Meruit Claims

Harris also argued that it had an implied contract with Vought based on industry custom and a course of dealing between the parties.  Specifically, Harris contends that industry custom was to deliver tools only to an entity who did the refurbish work.  Harris also points to correspondence from Vought talking about 
when
 Harris started work, as opposed to 
if
 it started work, as evidence of a contract between the parties.

Whether an implied contract exists is determined from the actions of the parties.  
Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co
., 480 S.W.2d 607, 609 (Tex. 1972).  An implied contract exists when the facts and circumstances show a mutual intention to contract, i.e., a meeting of the minds.  
Id
.  The determination of whether there is a meeting of the minds must be based upon objective standards of what the parties said and did, not on their alleged subjective states of mind. 
 Ervin v. Mann Frankfort Stein & Lipp CPAs
, L.L.P., No. 04-06-00438-CV, 2007 WL 2253476, at *8 (Tex. App.—San Antonio Aug. 8, 2007, no pet.)
; 
CRSS Inc. v. Runion
, 992 S.W.2d 1, 4 (Tex. App.—Houston [1st Dist.] 1995, pet. denied).

Harris did not present any summary judgment evidence supporting its industry custom argument; thus, there is no evidence of an implied contract based on industry custom.  And the actions of the parties objectively show a mutual intent to contract only if and when Vought procured a contract with Lockheed.  Vought’s evidence that it never accepted Harris’s bids, along with the evidence that Harris knew it was not authorized to begin work until Vought consummated a contract with Lockheed and until Lockheed gave Vought the “go-ahead,” contradicts Harris’s claims of an implied contract.  And the evidence pointed to by Harris is consistent with the conclusion that Harris would be the sole subcontractor for the wing work only 
if
 and 
when
 Vought entered into a contract with Lockheed.  Thus, summary judgment was proper on Harris’s implied contract claims.

Summary judgment was also proper on Harris’s quantum meruit claim.  To recover under quantum meruit, a claimant must prove that (1) valuable services were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted, used, and enjoyed  by the person sought to be charged, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.  
Vortt Exploration Co. v. Chevron USA, Inc
., 787 S.W.2d 942, 944 (Tex. 1990); 
Residential Dynamics LLC v. Loveless
, 186 S.W.3d 192, 199  (Tex. App.—Fort Worth 2006,  no pet.).

Vought introduced summary judgment evidence conclusively negating this cause of action.  Vought showed that it paid for the only services provided by Harris:  the unloading and storage of the tools.  Although Harris contends that it performed a valuable service to Vought by being ready and able to start the wing work as soon as Vought entered into a contract with Lockheed, this evidence shows nothing more than that Harris anticipated a future business opportunity.  Such an expectation cannot form the basis of a quantum meruit claim.  
Richter v. Wagner Oil Co
., 90 S.W.3d 890, 895 (Tex. App.—San Antonio 2002, no pet.); 
Peko Oil USA v. Evans
, 800 S.W.2d 572, 576 (Tex. App.—Dallas 1990, writ denied)
.  Accordingly, we hold that the trial court did not err by granting a traditional summary judgment on all of Harris’s claims.  We overrule Harris’s first issue.  Having determined that summary judgment was proper under the traditional standard, we need not address Harris’s second issue challenging the no-evidence summary judgment.  
See Reynolds
, 188 S.W.3d at 258.

Conclusion

Having determined that the trial court properly granted Vought’s traditional motion for summary judgment, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DELIVERED: November 8, 2007

FOOTNOTES
1:
See 
Tex. R. App. P. 47.4.